Good morning, Your Honors, and may it please the Court, my name is Libby Locke, and I represent the appellant, Sarah Palin, in this action. This case presents the simple, straightforward question of whether a district court violates Rule 12 by convening an evidentiary hearing to take testimony of a single defense witness on that individual's subjective state of mind and then credits that testimony over the well-pleaded allegations in a plaintiff's complaint. It absolutely does. Did the plaintiff object to what I agree is an unusual procedure? Your Honor, we did not object at the time. We do not object now to the holding of a hearing, Your Honor. What we object to is what the district court did with the testimony in crediting that testimony against Ms. Palin's well-pleaded facts and allegations. Here, it violated Rule 12b-6 and Rule 12d, and it violated Rule 12b-6 standards by failing to accept Ms. Palin's well-pleaded facts and inferences arising from those facts as true, including that the and direct link between Sarah Palin's map and Jared Lee Loeffner's shooting of Congresswoman Gabby Giffords. It also violated Rule 12d by taking the extraordinary step of soliciting testimony of James Bennett, the New York Times editor who wrote the defamatory article and concluded that his self-serving testimony was, and I quote the district court here, Your Honor, more plausibly consistent with an innocent mistake than in having acted with reckless disregard. When this went on, there was no question about this being converted to Rule 56? No, Your Honor. He kept it under Rule 12? He did at the entire time, Your Honor, and Ms. Palin and her counsel had no notice that there was a possibility of conversion to Rule 56, Your Honor. Mr. Turkel, But it never was converted either. It never was, and the New York Times asked this court to retroactively convert this to a motion for summary judgment, and that's inappropriate because Ms. Palin had no notice, nor did she have any reasonable opportunity to present discovery materials to the court. But in connection with that, did you make a request that he convert it into a Rule 56 in view of the fact that you went away from the pleadings by having this hearing? I mean, this is tremendously unusual to have a hearing like this. It is unusual, Your Honor, and if you look at the colloquy between Mr. Turkel and Judge Rakoff at the end of the evidentiary hearing, the judge asked for memo of law briefing after the hearing, and Mr. Turkel said, We have the 12B-6 within the four corners of the pleading stage, Your Honor, and Judge Rakoff expressly said, We're not evaluating credibility. I'm doing this under plausibility, under Iqbal and Twombly. He didn't evaluate credibility on a Rule 56 motion either. No, you're right. You're exactly right, Your Honor, and under Rule 56, still, of course, memory, Mr. Bennett testified that he didn't remember reading articles that would have shown, which was direct evidence of actual knowledge that what he was saying was false. He said he didn't remember, and questions of memory are credibility questions for a jury. You had a jury trial, didn't you? Yes, Your Honor. Yes, we did. So, and I take it that he basically, from my reading of his opinion, accepted Bennett's testimony. He did, and he credited, and he weighed plausible inferences here. He never said that it was implausible, the complaint or the allegations, and, Your Honor, I would draw the Court's attention to the Court's decision. Time after time, the Court goes on and on crediting Mr. Bennett's testimony over the well-pleaded allegations. Your side also, however, submitted materials outside the pleadings, correct? The District Court expressly requested, at the end of the evidentiary hearing, a memo of law about what this hearing . . . Mike, there were hearing exhibits marked and received, offered by both sides? There were, but the exhibits . . . Were those materials outside the four corners of the complaint? There were articles that were cited, that were not part of the complaint, that could be judicially noticed. It was the fact of the article's publication, not the content of them. And in your post-hearing submission, did you also submit additional materials outside the pleadings? There were materials that were submitted that were outside the pleadings, but again, that was at the request of the District Court. Is that in the context of your applying for a . . . trying to file an amended complaint? Yes. Because your amended complaint expanded the materials. That is exactly right, Your Honor. Add that to the amended complaint. And as part of not only the evidentiary hearing, but also as part of the post-trial briefing, we expressly requested an opportunity for leave to amend, and the judge said, that's not in front of me right now. I have another question for you. It appears throughout, in his hearing, that he decided the question of plausibility in light of the plaintiff's burden of proof, of clear and convincing. That's . . . Do you know . . . do you have any . . . what's your position on that? Yes. That was another error of the court. On page 16 of the decision, you can read what the District Court did. A defamation complaint by a public figure must allege sufficient particularized facts to support a claim of actual malice by clear and convincing evidence. What the judge did imputed . . . That's correct. And in fact, rule 9b says that malice can be pled generally. And in this Court's decision in Biro v. Conde Nast, this Court said that we have long made clear that defamation actions are, for procedural purposes, to be treated no differently than from other actions. And we've cited a variety of other clear and convincing evidence cases. For example, Lewis v. Trustmark from the Fourth Circuit, where the Court said it's absolutely improper to import a trial . . . What if we just looked at the complaint and ignored the hearing testimony? Does the complaint state a plausible claim of actual malice? We think that it's appropriate for this Court to look at the proposed amended complaint because the evidentiary hearing did happen. We now know those facts. We don't think it's appropriate to pretend that we don't know those facts. And the judge dismissed the complaint as futile, which is reviewed de novo for the same reasons. And we absolutely believe that the proposed amended complaint more than sufficiently alleges actual malice. The evidence of direct knowledge . . . There are facts supporting direct knowledge of Mr. Bennett and the Times that the District Court rejected or ignored. And those . . . I don't think you even need to get beyond the direct knowledge facts that we pled in the proposed amended complaint, but there are also facts of circumstantial evidence. Because there was no discovery, there were no depositions taken, correct? So you didn't have a deposition of Williamson. You didn't have a deposition of other staffers who may have talked to Williamson or Bennett. You didn't have a deposition of any of the staffers at The Atlantic, where Bennett worked before, which had articles that contradict the New York Times piece. That's exactly right, Your Honor. We learned of Mr. Bennett's identity a few days before the hearing. We got 30, 40 minutes to cross-examine him. He wasn't going to allow discovery. No. He stayed that discovery at the status conference. We had served interrogatory and document production requests, but they were not permitted to be answered. The New York Times elected to file a motion to dismiss within one week as opposed to two weeks in order to stay that discovery. And the Supreme Court in Herbert v. Landau said, you're never going to be able to get a defendant to admit on the stand that they acted with actual malice. Subjective state of mind can be proved through circumstantial evidence, and that's precisely why what the district court did here violated Rule 12D. The jury gets to consider his testimony, which is, I either didn't read it or if I read it, I forgot it, and gets to consider the fact that there were articles that were presented to him, presumably at The Atlantic, that contradicted what he said in the Times, and also articles that were in the Times files that were either, could have been read by him or could have been researched by him and deliberately disregarded. All of this would come out at the end of a, you know, through discovery. Exactly. Through discovery. And this court has expressly held in the Enry Publication Antitrust Litigation in 2012 that questions of a witness's credibility, perception, or memory are questions of credibility for a jury. It was improper for the district court to credit Mr. Bennett's testimony that he didn't remember reading these Atlantic articles or the New York Times articles. That would have been for a jury to decide, even, and that should be the standard. You have three minutes for rebuttal. We'll hear from the other side. Thank you, Your Honor. Thank you, Your Honors. I want to start by talking about what the district court did not do here, and it goes back to looking at what it is that Iqbal and Twombly require. Under Iqbal and Twombly, the district court is obliged to engage in a two-step process, the first of which is to factor out those allegations in a complaint that are not well-played, either because they're conclusory, they're internally contradictory, or they're just or facts on which the court can properly take judicial notice. That's what the court did in this case. Wait a minute. If the court had just ruled on the complaint, I could see your argument. But with the hearing, that changes the entire picture, it seems to me. The extent to which the judge relied upon Bennett's testimony at the hearing is critical to this appeal. Your Honor, two points. You can't be denying that he relied on Bennett's testimony. You can't. He only relied on those portions of Bennett's testimony that were affirmatively adopted and endorsed by the plaintiff in her post-hearing briefing, and then again in her proposed amended complaint. In the middle, in the game, to all of a sudden insert this kind of a hearing, and then ask for comments about and reactions to the hearing. He wanted to make, in effect, proposed findings and conclusions on the hearing. But in effect, didn't he really try the issue of actual malice? Your Honor, he most certainly did not. I think it's important to emphasize a few things. He only adopted those facts that the plaintiff herself expressly endorsed in her post-hearing brief. So she endorses, you're saying that the complaint endorses the fact that Bennett forgot everything or didn't read things that were in front of him or that were available to him. Is that the position that the other side is taking? No. The other side, what I'm saying is, Judge Rakoff did not accept contrary facts that were disputed. He said, look, there are two ways— What was in Bennett's head? And didn't he resolve that question at the hearing? No, he did not. Oh, wait a minute now. Didn't he say, to put the matter simply, Bennett, as the undisputed testimony shows, wrote the offended passages over a period of a few hours and published it soon thereafter? And then, shortly after that, his mistakes—it was a mistake the judge found in linking the map to the shooting—were called to his attention. He testified—the judge says he testified that he himself did not read the hyperlinked article when rewriting the editorial or do any investigation of his own. That's his testimony. It's being accepted by the judge, isn't it? And he testified later on, on page 22 of his opinion—he wrote on page 22 of his opinion that Bennett testified that he did not remember any of these articles. Or if he did read them when they appeared earlier, he did not have them in mind when he wrote the editorial. He's making findings. No, he's not, Your Honor. He is recounting what— Then he decides that the position of the New York Times is more plausible than the other side. The other side's less plausible. He used that phraseology. He could have used the word probable very easily. His mindset was thinking about weighing evidence, and he did weigh evidence here. Your Honor, I—with all respect, I don't believe that that's what Judge Rakoff did. Now— He certainly expressed a denial of doing that, but I'm just wondering what happened at this hearing. And— What really happened at this hearing. And what really happened at the hearing—and again, I think it's important to emphasize that Mrs. Palin has said two things today that are important. One is, they didn't object to the evidentiary hearing. They embraced it. So under the Guerreri case and the Reliance Insurance case— My question is, should we embrace judges doing this? Well, my point is, you don't— That's the issue that this Court has to, I think, broadly has to face. My point is that I understand why the Court is concerned about it, but my point is that you don't have to do that, address that question to decide this case, because this is a case— Wait until the next time he does it. Well, but this is a case in which the plaintiff endorsed it, embraced it. At the end of the evidentiary hearing, Judge Rakoff said, if any party wants to argue to me in their post-trial, post-evidentiary hearing briefs, that I shouldn't consider anything said at this hearing in making my decision, please go ahead and do that. They not only didn't do that, they cheered him on. They said, this was great. This is something that was good. And the other thing that Ms. Locke said that I think is very important, which I agree with, is that this Court should make the plausibility assessment based on the proposed amended complaint. Well, Mr. Levine, what you're basically saying is, if both sides agree, you can amend the rules by yourselves. Isn't that what happened? You amended Rule 12b-6. As Ms. Locke said— You say both sides agree. They didn't object. Fine. Does that mean now we're bound to— We're bound by that? That you can just say willy-nilly, we're not going to follow Rule 12b-6? We can go outside the pleadings? Your Honor, there are cases in this Court, the Guerreri case, the Reliance Insurance case, and others, that say when both parties venture outside the complaint and put in information on a 12b-6 motion that the Court then considers with both parties' knowledge and consent, then there is no violation of Rule 12b-6 and no need to convert to Rule 12d. But the more important point, I think, is that both sides agree that the Court should focus its attention on the proposed amended complaint, put the evidentiary hearing to the side, look at the proposed amended complaint, and determine whether it plausibly states a claim for actual malice. And we respectfully submit that Judge Rakoff was absolutely correct that it did not state a plausible claim, because under Iqbal and Twombly, when there is an obvious alternative explanation for what happened, the Court is bound to credit that explanation. There are two explanations here, it seems to me. One may be more obvious. You may certainly, at trial, prevail. I'm not questioning that. But there's another theory that there was a desire to hurt Ms. Palin by putting out what they did, and that by adding the hyperlink, which Judge Rakoff unequivocally says cuts in favor of the New York Times, that there's another theory to that. And that theory is that the public wasn't going to read the hyperlink, just the way  he knew they weren't going to read it. And it was put in there at a point in which he'd made the opposite assertion, and the public could just as easily say, oh, that hyperlink supports, obviously supports, we don't need to read it, but it obviously supports what he just said. I mean, there are lots of other theories here. He was exposed to all these articles, both as the editor of the Times, and also as the editor of Atlantic, and he says, oh, I never read it. He's a highly functioning person in our society. He's the editor of the editorial page of the New York Times. But he's testifying that he has no memory of these things. And this is not an issue that was sort of off the radar screen for him. He was a very, he was conscious of the problems of guns in our society, and the problems of the political rhetoric in our society. And it's hard to believe that the incident with Loeffner and Gabby Giffords was not at the forefront of his mind and everything that occurred about it. The jury at least could consider that, couldn't they? They never get to a jury, Your Honor, because if you break down all of the things you just said, as Judge Rakoff did, they are not plausible. They raise a number of questions to which there are no plausible answers. For example, if there was such a consensus out there, this widely held consensus about the fact that the Crosshairs map was irrelevant to the Loeffner shooting, why would Bennett propagate deliberately a falsehood that he knew could be so easily debunked? And it's not debunked until the next day. Within hours, Your Honor. And why would he correct it so promptly? If he had this predetermined plan that he was going to defame Mrs. Palin because he had had this long-simmering personal animosity for her? One could argue, I'm not saying this is true, that of course he knew he was going to correct it. I'll put it out there, and then if I'm corrected, I'll correct it. It could have been premeditated. You don't know, because the jury wasn't able to hear cross-examination, and there is no You know, Judge Rakoff was the fact finder. Your Honor, I don't believe Judge Rakoff found any facts. He just assessed the plausibility of the complaint, the allegations of the complaint. And then he determined that the complaint, that the mistake was the more plausible alternative. No, he didn't say that, Your Honor. He used the word more plausible one time when he was talking about the relevance of the fact that the Times published a prompt correction. He said such behavior is more plausibly consistent with making an unintended mistake than correcting it, and then correcting it then with acting with actual malice. Your Honor, that was specifically directed to the issue of the correction. And I submit that reasonably construed in context what Judge Rakoff was saying is that it simply is not plausible to suggest I looked for other statements in which he referred to plausibility here, and he uses the term implausible, never uses the term implausible in the context of assessing her allegations. One is in reference to the purpose of the hearing, and the second occurs when he refers  So he rules against Palin, but he doesn't use the term, the complaint, doesn't say this complaint is implausible. He does say that he is assessing it for a plausibility, and he rules against her. But I don't know what he was thinking. I mean, this is such an unusual proceeding that it seemed to me that we ventured into the area of a trial. May I make two other quick points, Your Honor? I know my time is up. No, go ahead. One is, if you look at the Supreme Court's decisions in both the Iqbal and Twombly cases, you will find language in both cases where the court says that in light of an obvious alternative explanation that is more likely than the one proffered in the complaint, the complaint's allegations are not plausible. There are cases that say that you can have two plausible theories, two plausible approaches, one more plausible and the other less plausible, and the less plausible one is sufficient. And Your Honor, I don't disagree with that, but that is not, I think, fairly read what Judge Rakoff did. Why don't you, before you finish, just sum up for us why, just looking at the amended complaint and not at what Judge Rakoff was thinking or said, why do you say it doesn't plausibly allege actual malice? Because on the one hand, you have this obvious alternative explanation that under time pressure to get out an editorial, to timely comment on this breaking news event of national importance, a mistake was made and it was promptly corrected within hours. On the other hand, you have this tale about a long-simmering personal animosity against Mrs. Palin that supposedly arises from the fact that she endorsed his brother's political opponents for office and that she has different views than he does on the Second Amendment. There's your jury argument. You've made a good jury argument. But it goes to plausibility, Your Honor, especially in light of the obvious alternative explanation. He then sits on this simmering animosity for seven years and does nothing. And during this same period, he's publishing all these articles in the Atlantic and the New York Times that exonerates her from any responsibility for the Lochner shooting. And then suddenly, he decides that he's going to slip into the middle of this editorial a reference to political incitement and the MAP and the Lochner shooting and get his long-awaited revenge. And then, when it's inevitably- It's all prompted by the Hodgkinson shooting. That's correct. Right. That's correct. But sadly, Your Honor, we have a mass shooting in this country pretty much every month these people write columns about shootings and gun violence and political incitement. So it wasn't like he needed to wait the seven years to do this. And then he promptly corrects it. Our argument, which Judge Rakoff accepted, and if you look at the last paragraph of his opinion, you will see this, is that all this plausibly amounts to the fact that an honest error was made and it was promptly corrected. It does not plausibly allege, this scheme does not plausibly allege what needs to be alleged here, which is that he published something that he knew at the time was false or that he, at the very least, had a high degree of awareness was probably false. It certainly doesn't. It certainly is implausible if you accept Mr. Bennett's testimony, which was outside of the pleadings. Your Honor, you're saying he accepted Mr. Bennett's testimony. I'm saying that what he did was look at the allegations of the complaint that were contrary to that testimony and said, that's just not plausible. Nothing at the evidentiary hearing supported it. That's true. But it is just not plausible to say that this man read these articles, had them in his mind, knew what he was writing was false and went ahead and did it anyway. That's the very protection that the actual malice standard in New York Times versus Sullivan is designed to provide. There's also a reckless disregard component. Reckless disregard is defined as a high degree of awareness of probable falsity. It is, you knew it was false or you knew it was probably false. And in this case- You doubt that, that it was false after you've heard his testimony or that he was, you know, after you've heard his testimony, you know exactly what the outcome of this case should be. Your Honor, I understand that you are quite troubled by the evidentiary hearing. And I acknowledge we didn't ask for it, and I acknowledge it was quite unusual. But the point is that they embraced it, so it shouldn't be held against us. And second, as Ms. Locke said, and I totally agree with this, look at the allegations of the proposed amended complaint. And assess plausibility under the rules as set forth by the Supreme Court, Nick Balentwombly. And if you do that, you cannot reasonably say that the tale that's told in that amended complaint is plausible. What if there was discovery here, and it turned out that there were staffers who remember talking to Mr. Bennett and telling him about the articles that were out there. Or that there were people at the Atlantic who talked to him when he edited those articles, and he was aware of that. And then the jury would have to face the question of whether he was telling the truth when he said he couldn't remember any of this stuff. Your Honor, as the Supreme Court made very clear in the Twombly case, you don't get to discovery. You don't get to look for that needle in the haystack, unless you have first made a plausible allegation. But you cannot make a plausible allegation based upon someone's testimony. Outside of the record, outside of the pleadings, without full discovery, which might challenge that assumption. Your Honor, if that's the case, in a public figure defamation case, to be litigated under the actual malice standard, then that standard is effectively a nullity. Because any, if you have to have a hearing on actual malice and make a determination on that. In order to satisfy, in order to determine whether the complaint is plausible, is that what you're saying? No, I'm saying that you have to have plausible allegations in the complaint that there was actual malice. If you allow a public figure plaintiff like Mrs. Palin to bring a complaint, say I think this was false about me, and they should have known it was true. And therefore, I can spin all these theories about refusal to retract when there was no retraction demand and a correction was promptly issued, to say they didn't check their own files, they didn't follow their internal procedures. You're asking for a confession on the part of whoever writes these articles that they were acting with malice. No, Your Honor, there are plenty of cases in which allegations of actual malice properly survive a motion to dismiss. The amici in this case cite the court to the Zimmerman versus Al Jazeera case in the district court in DC. Where the complaint alleged that the sole source for the article recanted in writing before the article was published, and the defendant was aware of that written recantation. That plausibly alleges actual malice. Thank you, Your Honor. We'll hear the rebuttal. I want to address the point that we embraced the procedure that was adopted here. Let me be clear, we were not and we do not object to the hearing itself. What we objected to, and the only point that we were put on notice of error, was when the district court weighed in its decision, once its decision was issued, when it weighed testimony and credited allegations, accredited testimony against Ms. Palin. I want to point the court's attention to the colloquy between Mr. Turkel and Judge Rakoff. I'm not quite sure I understand that point. I mean, what was the point of the hearing but to get some elaboration on some of the allegations, including who wrote the editorial? A few responses, Your Honor. In other words, I'm just saying, you must have known that there would be testimony coming and that there would be some reliance on it. Two responses, Your Honor. Ms. Palin had requested some discovery, including the identity of the author. Judge Rakoff was giving us, through this hearing, the identity of the author. But what we said at the- I think that he was giving you a deposition of sorts. No, no, he said expressly at the hearing that this does not substitute for the rules of discovery and depositions, including of Mr. Bennett, would go forward if he denied the motion to dismiss. And in our post-trial brief, Your Honor, we said that whatever testimony was going to be considered by the court, it had to be construed in our favor because we are on a 12B6. And Judge Rakoff repeatedly, in his order for the evidentiary hearing, after the colloquy between Mr. Turkel and himself, Judge Rakoff, he said, let me read to you what he said. But again, I want to stress, I'm not making any determinations, and I don't want you to make any determinations about the credibility of Mr. Bennett or not. That's not the purpose of this hearing. The purpose of this hearing is to ascertain what is plausible and what is not plausibly possible, insofar as a motion to dismiss is concerned. So we were not put on notice that there was going to be error until the district court issued its decision and said, well, it's more plausibly consistent with an innocent mistake. It was a mini trial on actual malice that denied Ms. Palin the opportunity to get discovery, to pressure test the claim that Mr. Bennett just didn't remember or didn't know. And that's exactly what discovery would have done in this case. And going to the proposed amended complaint, if the allegations and the factual support of how Mr. Bennett and the New York Times knew what it was saying was false is not enough to survive a motion to dismiss, no defamation plaintiff will ever be able to plausibly allege actual malice in a case going forward. There is a plethora of facts about how and what articles the New York Times and at the time it wrote this article, and it all comes down to the idea that Mr. Bennett said, I don't remember, that is a credibility determination for a jury. It should not have been decided on a 12B6 pleading stage. Thank you, Your Honor. Thank you. We'll reserve decision.